UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
OLIMPIADA MUNTEANU,

                      Plaintiff,

            -against-

VILLAGE OF GREAT NECK and BUILDING
DEPARTMENT OF THE VILLAGE OF
GREAT NECK,

                    Defendants.
--------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 25-2458 (GRB) (ARL)

**LINDSAY, Magistrate Judge:**

The *pro se* plaintiff, Olimpiada Munteanu ("Munteanu"), commenced this Section 1983 action on April 28, 2025, against the defendants, the Village of Great Neck ("Village") and the Building Department of the Village of Great Neck ("Building Department"). Munteanu's complaint asserts five causes of action, namely, unreasonable exercise of governmental power, infringement of property rights, violation of due process, defamation and emotional distress, all stemming from the alleged failure to issue her a building permit. ECF No. 1. Before the Court, on referral from District Judge Brown, is the defendants' motion to dismiss the plaintiff's complaint on the grounds that the plaintiff's claims are barred by the doctrines of *res judicata* and collateral estoppel, time-barred by the applicable statutes of limitation, and not ripe for review by this Court. The defendants also contend that Munteanu has failed to exhaust her administrative remedies and that the Village is entitled to qualified immunity. For the reasons set forth below, the undersigned respectfully recommends that the motion to dismiss be granted in its entirety.

## BACKGROUND

The facts in this section are drawn from the complaint and accepted as true for the purpose of evaluating the defendants' motion to dismiss. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). The Court also takes judicial notice of court documents from Munteanu's prior state and federal court actions in order to describe the correct procedural posture of this case.

### A.    The Instant Complaint

Munteanu is a resident of New York residing at 14 Red Brook Terrace in Great Neck. Compl. ¶ 1. On July 30, 2021, Munteanu bought a house located at 130 Baker Hill Road in Great Neck, which she claims was in bad condition. *Id*. ¶ 2. She alleges that the house was in such bad shape the "mortgage Banque" required work to be done within the first 90 days after the mortgage was signed. *Id*. To this end, Munteanu claims that she was required to sign a "contractual note" concerning the work to be done. *Id*.

Munteanu alleges that she immediately showed the contractual note to the Superintendent of the Building Department but the Building Department refused to give her a "temporary permit." *Id*. ¶ 4. Fearing that she would lose her house, Munteanu started working on the house without first obtaining the requisite permits. *Id*. ¶ 5. On September 7, 2021, the Village issued a Stop Work Order. *Id*. ¶ 10; Ockert Decl. Ex. G. Munteanu stated in a related state court action that she removed the Stop Order from the front door because she didn't know it needed to stay on the door. Ockert Decl. Ex. E. Nonetheless, Munteanu now contends that Stephen N. Haramis ("Haramis"), the former Building Superintendent for the Village, damaged her reputation when he stated at a Board of Trustees meeting that she had removed the Stop Work Order. Compl. ¶ 10.

On November 18, 2021, the Village then issued a "Boarding Letter." *Id.* ¶ 5; Ockert Decl. Ex. H.  The Boarding Letter stated:

> Pursuant to the Village of Great Neck Building Code Section 205-10, this letter will serve as written notice regarding the circumstances that pose a clear and imminent danger to life and property due to unsafe hazardous conditions at 130 Baker Hill Road.
>
> Demolition, construction, and alterations have commenced without first obtaining a building permit, plumbing permit and mechanical permit from the Building Department.  Additionally, there are no records of licensed contractors, plumbers, nor electricians on file.  Pictures taken reveal dangerous and unsafe conditions due to work performed without the benefit of inspection.
>
> Electrical work was performed without inspections, thereby causing the possibility of fire if not properly installed.  Additionally, it is unknown if the electrical work is live.  Gas work was performed with no gas tests.  Gas piping that is leaking can cause an explosion.  Stairs leading from the kitchen to the basement and stairs and catwalk leading from the second floor to the first floor have no railings, causing a fall risk.  Debris is scattered throughout the interior and exterior of the property, causing a tripping hazard.
>
> These circumstances pose a clear and imminent danger to life and/or property due to an unsafe and hazardous condition at 130 Baker Hill Road.
>
> On November 16, 2021, the back door and two-car garage was boarded and the front door was padlocked to prohibit further work from being performed at 130 Baker Hill Road, as hazardous and unsafe conditions are found to exist.

*Id.*  Munteanu asserts that as a result of the boarding, from November 2021 until May 2022, she was denied access to her house, which prevented her from hiring contractors needed for the renovation permit and from removing scaffolding that she had rented from Home Depot.  Compl. ¶¶ 7, 8.

### B.    Prior State and Federal Court Actions

According to the defendants, Munteanu has commenced fourteen lawsuits against the Village arising from the same general facts and circumstances that are alleged in the instant complaint.  Munteanu first commenced two actions in the Nassau County Supreme Court.  *See* Ockert Decl. Exs. A, C.  In the first lawsuit commenced in 2021, Munteanu sued Haramis for

3

damages allegedly stemming from the Building Department's failure to issue her a permit and

for having boarded up her house in accordance with the Village Building Code.  *Id*. Ex. A.  The

action was dismissed by the Hon. Eileen C. Daly-Sapraicone, on March 14, 2023.  *Id.* Ex. B.  In

her decision, Judge Daly-Sapraicone noted:

> It is undisputed that on August 16, 2021, Defendant performed a site
> inspection of the premises and observed workers and a van associated with
> Francis General Construction, along with debris evincing construction work
> was being performed.  The construction work was being performed without a
> permit issued by the Building Department for the Village. Defendant issued a
> Violation on August 19, 2021.  On August 31, 2021, another Violation was
> issued to the Plaintiff after another site inspection revealed debris and a
> dumpster consistent with construction at the premises.  On September 7, 2021,
> a Stop Work Order was issued for Plaintiff's repeated violations.  On
> September 13, 2021, the Stop Work Order was removed from the premises and
> a Summons was issued.  This Summons charged Plaintiff with a violation of
> the Village Code for removing the Stop Work Order and directed Plaintiff to
> appear in Village Court in October, 2021.  On September 27, 2021, the Nassau
> County police were contacted to shut down work being done on the subject
> premises.  It is further undisputed that Plaintiff refused to get a licensed
> general contractor, a plumber licensed with the Village and electrician licensed
> with the Town of North Hempstead.  In October 2021, Plaintiff plead guilty to
> a violation of the Village Code for removing the Stop Work Order placard and
> paid the corresponding fine.  On November 15, 2021, the Building Department
> performed another inspection and it was revealed that construction work
> continued to be performed at said premises, still with no permit on file,
> resulting in the issuance of an additional summons to Plaintiff.  A trial was
> held in Village Court, for which Defendant was present, and Plaintiff was
> found guilty of the violation and directed to pay the fine.  On November 16,
> 2021, the subject premises were deemed to constitute unsafe and hazardous
> conditions that posed a clear and imminent dangers to the life and property of
> the general public and the subject premises was boarded up in accordance with
> the Building Code.

*Id*.  In addition, in dismissing the complaint, Judge Daly-Sapraicone held, among other things

that, "the grant or denial of a building permit . . . may not form the basis for liability in tort" and

that Munteanu had failed to exhaust her administrative remedies.  *Id.*

In her second Nassau County Supreme Court action, Munteanu again sued Haramis,

along with three other Building Department employees and an attorney for the Village, alleging

that she had suffered damages stemming from their failure to issue her a permit and the house

being boarded  *Id*. Ex. C.  The second action was dismissed on the grounds that the defendants

were immune from liability because they were acting in their official capacities.  *Id*. Ex. D.

Thereafter, Munteanu commenced four actions in the Nassau County District Court

bearing Index Nos. CV-013588-23, CV-000159-24, CV-000160-24 and CV-002546-24.  *See id*.

Ex. E; ECF No. 10.[1]  According to the defendants, all of the Nassau County District Court

actions were dismissed on the merits.  *See e.g.* Ockert Decl. Exs. F.  For example, in the action

bearing index number CV-000159-24, Munteanu, as she has in this case, sued the Village and the

Building Department for Unreasonable Exercise of Governmental Power, Infringement of

Property Rights; Violation of Due Process, Defamation, Emotional Distress, Negligence and

Impending Ability to Obtain Permit.  *Id*. Ex. E.  The action was dismissed by the Hon. Norman

A. Sammut on June 11, 2024, for failure to comply with General Municipal Law Section 50-e.

*Id*. Ex. F.  Specifically, Judge Summut found that Munteanu had failed to timely file a Notice of

Claim with the Village requiring dismissal of that action.

Despite having her first six lawsuits dismissed, Munteanu then commenced four

additional actions in the county district court bearing Index Nos. CV-013432-24, CV-013433-24,

CV-003598-25 and CV-003599-25, all stemming from the same general facts and circumstances

alleged in this case.  Defs.' Mem. at 5.  According to the defendants, prior to filing the motion

pending before this Court, actions CV-013432-24, CV-003598-25 and CV-003599-25 were

dismissed on the merits but the defendants were still awaiting decision on action cv-013433-24.

Finally, Munteanu commenced two actions in the Small Claims Court based on the same facts,

---

[1] The defendants note that Munteanu stated in her action bearing Index No.: cv-010664-24 that she was seeking to relitigate the previously dismissed action of cv-000160-24.

one of which was dismissed and one of which was filed the week the defendants filed the instant motion to dismiss.  *Id.*

## DISCUSSION

### A.      Standards of Review

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient "to raise a right to relief above the speculative level."  *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), aff'd, 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir. 2010)).  The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*.  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully."  *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

"A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review 'to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" *Florimon v. Allstate Ins. Co.,* 616 F. Supp. 3d 180, 185 (D. Conn. 2022) (citing *McCarthy v. Dun*

*& Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007)). However, "[w]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 230–31 (2d Cir. 2016). *Id.*

### B.     The Building Department

As a threshold matter, the undersigned respectfully recommends that the claims against the Building Department be dismissed since the Building Department is not a legal entity that can be subject to suit under § 1983. *See Wozar v. Campbell*, 763 F. Supp. 3d 179, 198 (D. Conn. 2025) (dismissing action against municipal police department); *Brunson v. City of New York Dep't of Correction*, No. 16 CV 1471 RRM LB, 2016 WL 4203485, at *3 (E.D.N.Y. Aug. 9, 2016) (finding that the New York City Department of Correction, as an agency of the City of New York, does not have a legal identity separate and apart from the municipality and cannot be sued).

### C.     Res Judicata and Collateral Estoppel

The Court turns next to the Village's argument that the actions should be dismissed based on the doctrines of *res judicata* and collateral estoppel. "A court may dismiss a claim on *res judicata* or collateral estoppel grounds on either a motion to dismiss or a motion for summary judgment." *Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.*, 757 F. Supp. 2d 218, 223 (E.D.N.Y. 2010).

#### 1.     Res Judicata

"Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *McCluskey v. Lopez*, No. 24-381, 2024 WL 5182876, at *4 (2d Cir. Dec. 20, 2024) (citing *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014)

7

(quotation marks omitted)).  "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 88 (2d Cir. 1999).  "'To prove the affirmative defense of *res judicata*, a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *McCluskey*, 2024 WL 5182876 at *4.  However, "'[i]n determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive.'" *Umar Oriental Rugs, Inc*., 757 F. Supp. 2d at 224 (citing *Maharaj v. Bankamerica Corp*., 128 F.3d 94, 97 (2d Cir. 1997)).  "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit." *Id.*

Here, there is no question that the state court actions described above not only involve the same facts and allege the same type of wrongful conduct, but the cases also involve the exact same "transaction."  In her first Nassau County Supreme Court lawsuit, Munteanu sued Haramis for damages allegedly stemming from the Building Department's failure to issue her a permit and for having boarded up her house in accordance with Village Building Code.  Ockert Decl. Ex. A.  Munteanu alleged in that action that she had attempted to access her property, but her phone calls and emails to the Village requesting access remained unanswered – in other words, the Village had denied her access to her property without explanation.  *Id*.  In her second Nassau County Supreme Court lawsuit, Munteanu sued Haramis and four other Village employees seeking damages for the same set of events.  *Id*. Ex. C.  Although, read liberally, Munteanu was only seeking a declaratory judgment and damages for defamation in her first two state court actions, her claims for unreasonable exercise of governmental power, infringement of property

8

rights, violation of due process and emotional distress, could have been brought in those prior actions as they involved the same events, evidence and factual issues. *Umar Oriental Rugs, Inc.,* 757 F. Supp. 2d at 224 (finding plaintiff's new negligence claim barred by the doctrine of *res judicata* because it was based on the same series of facts and events as the claims brought in the prior action): *see also Sure–Snap Corp. v. State St. Bank and Trust Co.*, 948 F.2d 869, 873–75 (2d Cir.1991) ("[a] party may not avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy").

Moreover, in at least one of the Nassau County District Court actions, Munteanu did sue the Village and the Building Department for the unreasonable exercise of governmental power, infringement of property rights, violation of due process, defamation, emotional distress, negligence and impending ability to obtain a permit, once again, complaining about the Building Department's failure to give her a permit for work at 130 Baker Hill Road, the Stop Work Order and the subsequent boarding of her house. Id. Ex. E. Accordingly, *res judicata* applies here because the fundamental basis of all of the lawsuits have remained the same.

In addition, the parties are in privity. "A privity analysis for *res judicata* purposes is broader than a traditional privity analysis." *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 380 (S.D.N.Y. 1999), aff'd, 207 F.3d 105 (2d Cir. 2000). In this Circuit, privity has been found when a non-party's interests in a prior litigation is virtually identical. *Id*. Indeed, where, as here, there is a close or significant relationship to a defendant previously sued, *res judicata* is available to a newly named defendant. *Id.* ("Village officials are entitled to *res judicata* because government officials sued in their official capacities are generally considered to be in privity with the governmental entity that they serve."). As such, the Village and the Building Department are entitled to *res judicata* despite the fact that they were not named in the first two state court actions.

Finally, all three of the lawsuits, offered by the defendants as examples, were adjudicated on the merits. *See Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009)("[T]he dismissal for failure to state a claim is a final judgment on the merits and thus has *res judicata* effects.). In sum, the undersigned concludes that the entire case is barred by the doctrine of *res judicata* and recommends that the defendants' motion to dismiss be granted.

## 2. Collateral Estoppel

It warrants mention that even if the defense of *res judicata* was unavailable, Munteanu would be precluded from relitigating many, if not all, of the issues she has raised in her federal action under the doctrine of collateral estoppel. "'[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has . . . been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Ashworth v. Boggio*, No. CV 15-948 (JFB)(ARL), 2016 WL 4398956, at *6 (E.D.N.Y. July 26, 2016), report and recommendation adopted, No. 15 CV 948 JFB ARL, 2016 WL 4399311 (E.D.N.Y. Aug. 15, 2016) (quoting *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 349-50 (E.D.N.Y. 2010)(citing *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999)) (quoting *Schiro v. Farley*, 510 U.S. 222, 232, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994)). "'Collateral estoppel, like the related doctrine of *res judicata*, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.'" *Id.* (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979)).

"'Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action.'" *Id.* (citing *In re Hyman*, 502 F,3d 61, 65 (2d Cir. 2007)

10

(citations omitted).[2] In this case, it is clear that many, if not all, of the issues presently raised by Munteanu were decided by the state court. For example, in this lawsuit, Munteanu claims that her property was unreasonably seized and access to her house was restricted without any explanation. Yet, in direct contradiction to those claims, Judge Daly-Sapraicone already determined that Haramis had performed a site inspection of the premises and observed construction work being performed without a permit. Ockert Decl. Ex. A. Judge Daly-Sapraicone also described a number of interactions with Munteanu that ultimately led to the boarding of her home. *Id.* In fact, Judge Daly-Sapraicone established that a Stop Work Order had been issued for repeated violations, that Munteanu was aware of the Stop Work Order and had even pleaded guilty to removing it from the front door, and that the premises were deemed unsafe after Munteanu refused to hire a licensed general contractor, electrician or plumber.

Finally, Munteanu had a full and fair opportunity to challenge the state courts' findings. Therefore, the Court concludes that, in addition to being barred by the doctrine of *res judicata*, Munteanu's federal claims are also barred by collateral estoppel. The undersigned, therefore, respectfully recommends that the complaint be dismissed.

### D.    Remaining Arguments

The defendants also contend that (1) the defamation claim is barred by the one year statute of limitations applicable to torts, *see* N.Y. C.P.L.R. § 215(3); (2) the unreasonable exercise of governmental power claim is barred by the four month statute of limitations applicable to Article 78 proceedings, *see* C.P.L.R. §7801; (3) the defendants are entitled to qualified immunity as their acts were discretionary, *see Rottkamp v. Young*, 21 A.D.3d 373 (2d

---

[2] The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues.'" *Ashworth*, 2016 WL 4398956, at *6 (citing *Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir. 1991)(citation omitted)).

Dept. 1964) (neither municipality nor the building inspector liable for discretionary act); and Munteanu's claims are barred as she failed to avail herself of all administrative remedies. Although there appears to be merit to these arguments, the undersigned will not address the additional contentions given the Court's determination that the suit is barred by the doctrine of *res judicata* and collateral estoppel.

## OBJECTIONS

A copy of this Report and Recommendation is being served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days.  Failure to file objections within this period waives the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
       June 24, 2026

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge

12